

# Missouri Court of Appeals

## Southern District

### Division One

M.P., a minor, by and through )
AMANDA ZIPFEL, as Next Friend, )
)
         Appellant, )
) No. SD37105
  vs. )
) **Filed: July 29, 2022**
TREXIS ONE INS. CORP., f/k/a )
ALFA SPECIALTY INS. CORP., )
)
         Respondent. )

### APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable Jason R. Brown, Judge

**<u>AFFIRMED</u>**

Appellant sought to recover under the uninsured motorist provisions of an automobile insurance policy. The trial court denied relief, finding that the liability did not arise out of use of an uninsured motor vehicle as defined in the policy. Appellant contends the trial court erred in granting judgment on that finding. We affirm.

### Background

Castle View Estates (the "RV Park") is a membership-owned RV park. The RV Park is private property. Castle View Drive, a road that runs through the RV Park, is owned

and maintained not by the state or a political subdivision, but by the RV Park. Because Castle View Drive is a private road, the property owners determine usage rules, such as a speed limit. Any road signage is privately posted, not posted by the state. No state-issued driver's license is required to operate a vehicle on Castle View Drive.

M.P. was visiting people he knew at the RV Park. They decided to go to the tennis and basketball courts. Some rode in golf carts; M.P. rode a bicycle. On the way to the courts, M.P. was struck by a golf cart and injured. The accident occurred "in the general area of the parking spaces adjacent to Castle View Drive," inside the RV Park.

At the time of the accident, M.P. was an insured under an automobile insurance policy issued by Alfa Specialty Insurance Corporation, which later became Trexis One Insurance Corporation ("Trexis"). The policy provided that Trexis would pay compensatory damages an insured is legally entitled to recover for an insured's bodily injury, caused by an accident, for which liability arose out of an owner or operator's ownership, maintenance, or use of an uninsured motor vehicle. The policy excludes from the definition of "uninsured motor vehicle" any vehicle or equipment "[d]esigned mainly for use off public roads while not on public roads."[1]

Appellant filed a claim under the uninsured motorist ("UM") provisions of the Trexis policy. Trexis denied the claim because the golf cart was designed mainly for use off public roads and the accident occurred in a parking lot, which was not a public road. Appellant filed suit. The parties filed competing motions for summary judgment, both of which were denied.

At the bench trial, the material dispute was whether liability arose out of use of the

---

[1] This language is a standard in automobile insurance policies. 2 Auto. Liability Ins. 4th § 23:33.

golf cart on a public road. After taking evidence, the trial court ruled in favor of Trexis, finding: (1) Castle View Drive was not open for free and common use by the public and was not used by the public freely and commonly; (2) the golf cart was not on a public road at the time M.P. was injured and the accident did not arise out of the golf cart's ownership, maintenance, or use on a public road; and therefore (3) Appellant did not show liability of the operator of the golf cart arose out of use of an uninsured motor vehicle as defined in the policy.

## Principles of Review

"The judgment is presumed correct, and the party challenging the judgment bears the burden of proving it erroneous. In this court-tried case, our review is governed by Rule 84.13(d) and *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)." *O'Connell v. Deering*, 631 S.W.3d 649, 652 (Mo.App. 2021) (internal citation omitted). "We are required to affirm the trial court's judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law." *Id.*

This appeal involves mixed questions of law and fact. Interpretation of an insurance policy is a question of law we review *de novo*. *Seeck v. Geico Gen. Ins. Co.*, 212 S.W.3d 129, 132 (Mo. banc 2007). The court's application of the law to the stipulated facts also is a matter for *de novo* review. *White v. Dir. of Revenue*, 321 S.W.3d 298, 308 (Mo. banc 2010). However, we defer to the trial court's assessment of the evidence when any facts relevant to an issue are contested. *Pearson v. Koster*, 367 S.W.3d 36, 44 (Mo. banc 2012). In the absence of specific findings of fact, the trial court's findings are considered as having been found in accordance with the judgment. Rule 73.01(c) (2020).

The burden of proving coverage is on the insured where, as here, the issue is whether coverage exists under policy definitions. ***State Farm Mut. Auto. Ins. Co. v. Stockley***, 168 S.W.3d 598, 600 (Mo.App. 2005). "'Definitions, exclusions, conditions and endorsements are necessary provisions in insurance policies. If they are clear and unambiguous within the context of the policy as a whole, they are enforceable.'" ***Floyd-Tunnell v. Shelter Mut. Ins. Co.***, 439 S.W.3d 215, 220 (Mo. banc 2014) (quoting ***Todd v. Mo. United Sch. Ins. Council***, 223 S.W.3d 156, 163 (Mo. banc 2007)). When a term within an insurance policy is clearly defined, that definition controls and we look nowhere else. ***Hobbs v. Farm Bureau Town & Country Ins. Co. of Mo.***, 965 S.W.2d 194, 197 (Mo.App. 1998). When a term within an insurance policy is undefined, we will apply the plain meaning, i.e., the meaning that would be attached by an ordinary person of average understanding if purchasing insurance. ***Progressive Preferred Ins. Co. v. Reece***, 498 S.W.3d 498, 502 (Mo.App. 2016).

## Discussion

An automobile liability insurance policy must include coverage "for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury . . . resulting therefrom." Section 379.203 RSMo. (2016). "The purpose of UM coverage is to take the place of the liability coverage the insured would have received had he or she been involved in an accident with an insured motorist." ***Floyd-Tunnell***, 439 S.W.3d at 220. Because Missouri's Motor Vehicle Financial Responsibility Law does not extend to off-road vehicles involved in off-road accidents, automobile insurers may exclude such vehicles from UM coverage when they are off public roads. ***State ex rel. Toastmaster, Inc. v. Mummert***, 857 S.W.2d 869, 871 (Mo.App. 1993) (citing ***Meeks v. Berkbuegler***, 632

S.W.2d 24 (Mo.App. 1982)).[2]  An uninsured motorist's liability is determined under tort law, but the insurer's obligation to pay UM damages to its insured is governed by contract law.  ***Bryan v. Peppers***, 323 S.W.3d 70, 74 n.2 (Mo.App. 2010).

The parties stipulated that the golf cart was a motor vehicle designed mainly for use off public roads.  While this may remove the golf cart from motor vehicle licensing and financial responsibility requirements, its design alone does not remove it from consideration as a motor vehicle for UM purposes.  "Even though a vehicle is designed exclusively for off-road use, if it was actually being operated on a public highway at the time of the accident, such use qualifies it as an uninsured motor vehicle."  2 Auto. Liability Ins. 4th § 23:33 and cases cited therein.

The parties agree "public road" is not defined in the policy.  Both sides claim the meaning of "public road" is unambiguous, yet they disagree on the definition and the proof required to meet that definition.[3]  Trexis contends "public road" must be given its plain, ordinary meaning, which would be an open way for vehicles, accessible to or shared by all members of the community.  Appellant argues "public road" has been judicially defined in Missouri as:  (1) any road to which the public has actual access and the use of which is free and common to all citizens, citing ***Faustlin v. Mathis***, 99 S.W.3d 546, 549 (Mo.App. 2003); (2) any street used for public travel, even if it is privately owned, citing ***Covert v. Fisher***, 151 S.W.3d 70, 77 (Mo.App. 2004); or (3) any road over which the

[2] Other states follow this same principle in their application of UM laws.  *See, e.g.*, ***Boniey v. Kuchinski***, 677 S.E.2d 922, 928 (W.Va. 2009) ("Where no liability insurance coverage is required on a motor vehicle under the financial responsibility law, obviously no uninsured motorist coverage is mandated to provide the equivalent of such coverage."); ***W. Am. Ins. Co. v. Pirro***, 808 P.2d 322, 323 (Ariz. Ct. App. 1990) (UM coverage "is intended to provide the reciprocal or mutual equivalent of automobile liability coverage under the Financial Responsibility Act and automobiles that are not intended to be operated on the highways need not be covered by liability insurance . . . .").

[3] Policy language is not ambiguous simply because the parties disagree on its meaning.  ***Scottsdale Ins. Co. v. Olivares***, 614 S.W.3d 65, 71 (Mo.App. 2020).

Highway Patrol has jurisdiction to enforce DWI laws, citing **State v. Gittemeier**, 400 S.W.3d 838, 844 (Mo.App. 2013).

Our task is not to select which of several "public road" definitions Missouri courts have applied in different legal contexts. Criminal cases, such as **Gittemeier**, driver's license revocation cases, such as **Covert**, and actions for declaration of or abandonment of a public road, like **Faustlin**, involve the application of different statutes with different policies and purposes. They may or may not be relevant or helpful in insurance cases, but they certainly are not *controlling* as to the definition of "public road" in an insurance policy. When Missouri courts are tasked with interpretation of an undefined term in an insurance policy, the standard is, and has been for some time, to apply the plain or ordinary meaning, which is the meaning that would be attached by an ordinary person of average understanding if purchasing insurance.[4]

Under this standard, the meaning of the term "road" contemplates a course or path, ordinarily used for vehicular traffic, with some sort of boundaries. **Young v. Owners Ins. Co.,** 562 F. Supp. 3d 250, 256-59 (D. Ariz. 2021); **Bloomquist v. NWNL Gen. Ins. Co.**, 421 N.W.2d 416, 419 (Minn. Ct. App. 1988). Such roads dedicated to, owned by, or maintained by the state or a political subdivision are unquestionably "public". As recognized in **Stockley**, 168 S.W.3d at 602-03, public use can also make a road public if the general public (1) has actual access to the road, AND (2) the general

---

[4] **Doe Run Res. Corp. v. Am. Guarantee & Liab. Ins.**, 531 S.W.3d 508, 511 (Mo. banc 2017); **Burns v. Smith**, 303 S.W.3d 505, 509 (Mo. banc 2010); **Ritchie v. Allied Prop. & Cas. Ins. Co.**, 307 S.W.3d 132, 135 (Mo. banc 2009); **Seeck**, 212 S.W.3d at 132; **McCormack Baron Mgmt. Servs., Inc. v. Am. Guarantee & Liab. Ins. Co.**, 989 S.W.2d 168, 171 (Mo. banc 1999); **Farmland Indus., Inc. v. Republic Ins. Co.**, 941 S.W.2d 505, 508 (Mo. banc 1997); **Greer v. Zurich Ins. Co.**, 441 S.W.2d 15, 27 (Mo. 1969); **Faries v. United Servs. Auto. Ass'n**, 628 S.W.3d 257, 260 (Mo.App. 2021); **Copling v. Am. Fam. Mut. Ins. Co., S.I.**, 612 S.W.3d 226, 230 (Mo.App. 2020); **Brown v. Am. Fam. Mut. Ins. Co.**, 572 S.W.3d 154, 156 (Mo.App. 2019); **Progressive Max Ins. Co. v. Hopkins**, 531 S.W.3d 649, 651 (Mo.App. 2017).

public uses the road freely and commonly.

This approach is consistent with the approach taken by the Supreme Court of Alabama. In the UM context, that court noted the term "public road" should be understood as classifying roads based on either ownership or use. ***Nationwide Prop. & Cas. Ins. Co. v. Steward***, 323 So. 3d 36, 38 (Ala. 2020). After examining legal treatises and the dictionary definition of "public," the court concluded a road may be classified as a "public road" in UM policies when it is publicly owned, maintained at public expense, or publicly accessible. ***Id.*** In ***Steward***, the road at issue was determined to be a "public road" because it was publicly owned, publicly maintained, and open to the public (albeit for a fee). ***Id.*** at 37.

In this case, there is no evidence in the record that Castle View Drive or the adjacent parking lot were dedicated to, owned by, or maintained by the state or a political subdivision. In determining whether the road was "public" by use, the court focused on public accessibility and whether use by the public was free and common. The trial court did not err in doing so.[5]

Appellant argues that Castle View Drive is a "public road" by virtue of its accessibility to and use by the general public, regardless of its private ownership. Some

---

[5] We often refer collectively to Castle View Drive and the adjacent parking lot where the accident occurred. We are aware that the parking lot is or could be considered separate from the road. According to deposition testimony offered at trial, the accident occurred in a striped no parking space between a sidewalk and a parking space for the physically disabled. In the UM context, a "public road" does not include areas that directly abut a public road but have a dissimilar function or purpose, e.g., sidewalks and walkways. ***Young,*** 562 F. Supp. 3d 250 at 256-59. An average purchaser of a policy would understand this. ***Id.*** "Certainly, it is the [meaning] he would intend to convey if he told his child to walk on the sidewalk and stay out of the road." ***Id.*** at 258.

Appellant contends the place of the collision may differ from the place where liability attaches such that failure to keep a careful lookout while the golf cart was being operated on Castle View Drive can establish liability even though the collision occurred subsequently in a parking lot. We are skeptical but need not reach that issue here because the trial court either expressly or implicitly found Castle View Drive was not a "public road," the golf cart was not on a public road at the time of M.P.'s injury, and the accident did not arise out of the ownership, maintenance, or use of the golf cart while on a public road.

of the facts relevant to the public use issue were stipulated, while others were contested. The trial court astutely and correctly recognized that, based on the stipulated facts and statements of uncontroverted material facts, neither party was entitled to judgment as a matter of law on this issue and set the case for trial.

The case was tried and Appellant, the party with the burden of proof, failed to persuade the trial court on this issue. The court expressly found that Castle View Drive was accessible for restricted use by the public but was not used by the public freely and commonly. Therefore, Appellant failed to show liability of the golf cart owner or operator arose out of use of an uninsured motor vehicle as required for UM coverage under the Trexis policy. Appellant was not entitled to judgment as a matter of law on the stipulated facts and Appellant failed to prove a contested issue of ultimate fact to the fact-finder's satisfaction. "'A party with the burden of proof cannot merely offer a submissible case; it must convince the fact-finder to view the facts favorably to that party. This is because evidence never proves any element until the fact-finder says it does.'" *Pennington v. Wilson*, 639 S.W.3d 544, 547 (Mo.App. 2022) (quoting *Black River Elec. Coop. v. People's Cmty. State Bank*, 466 S.W.3d 638, 640 (Mo.App. 2015)).

Although no evidence was necessary for the court to find in Trexis' favor on this issue, the record supports the trial court's findings and determination. There was evidence that the road and parking lot were private property; that one end of the road was barred for a portion of the year; that the public does not drive through the RV Park as a shortcut to access a public road; that guests who enter the RV Park by Castle View Drive are to check in with the office; that no state-issued driver's license is required to operate a vehicle on Castle View Drive; that postal, delivery, and emergency vehicles did not freely

8

drive on Castle View drive; and other evidence consistent with the trial court's findings.[6]

## Conclusion

The trial court did not err in its findings or application of the law to the facts stipulated and developed at trial. Point denied, judgment affirmed.

JACK A. L. GOODMAN, J. – OPINION AUTHOR

JEFFERY W. BATES, J. – CONCURS

WILLIAM W. FRANCIS, JR., J. – CONCURS

---

[6] This result is consistent with **Stockley**, *supra*, in which the plaintiff failed to prove an airport luggage "tug" was designed for use mainly on public roads or that the plain and ordinary meaning of "public road" included airport tarmacs. This result is also consistent with cases from other states whose courts have interpreted and applied similar UM policy language to an accident occurring off a public road and involving a vehicle designed for use off public roads. *See* **Bloomquist**, 421 N.W.2d at 419 (no UM coverage for person injured by ATV because the location of the accident, a public beach, was not a "public road"); **Wilcher v. Michigan Mut. Ins. Co.,** 691 F. Supp. 1019, 1021 (S.D. Miss. 1988) (no UM coverage because tractor was not designed for use mainly on public roads and was being operated on a private driveway when accident occurred).